IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

EDDIE BRILEY                                                                                           PLAINTIFF
ADC #116921

v.                                           5:17cv00275-JM-JJV

T. TAYLOR, Deputy,
Jefferson County Jail; *et al.*                                                                    DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.       Why the record made before the Magistrate Judge is inadequate.

2.       Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.  The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

## **DISPOSITION**

**I.   INTRODUCTION**

Eddie Briley ("Plaintiff"), currently incarcerated at the Delta Regional Unit of the Arkansas Department of Correction ("ADC"), filed this action *pro se* and pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) He alleges Defendant T. Taylor,[1] a deputy at the W.C. "Dub" Brassell Adult Detention Center, subjected him to excessive force during his incarceration there and then continued to "antagonize and provoke" him in the days following.[2] (*Id*. at 2-4.) Plaintiff seeks compensatory and punitive damages. (*Id*. at 7.) Defendant Taylor has filed a Motion for Summary Judgment, contending he is entitled to judgment as a matter of law on Plaintiff's claims. (Doc. Nos. 35-39.) Plaintiff has not responded, and the time for doing so has passed. After careful review, and for the following reasons, I find summary judgment is appropriate and Plaintiff's claims should be DISMISSED.

---

[1] This Defendant's name is Tracy Taylor. (Doc. No. 17 at 1.) The Clerk is directed to amend the docket to reflect his full name.
[2] Other claims raised in Plaintiff's Complaint, and other Defendants, were previously dismissed without prejudice. (Doc. Nos. 8, 12.)

## II.    FACTS

According to Plaintiff's Complaint, he was served a meal tray with a dirty spoon on it. (Doc. No. 1 at 2.)  He notified Defendant Taylor, who offered to get Plaintiff a new spoon; however, Plaintiff turned this offer down, saying the dirty spoon had contaminated his entire tray and he needed a new tray. (*Id*.)  Defendant Taylor refused and slammed the pod door. (*Id*.)  While Plaintiff spoke with other officials about the problem through the pod door, Defendant Taylor came over, yelled at Plaintiff, pointed his mace in Plaintiff's face, and told Plaintiff to move away from the door. (*Id*. at 2-3.)  When Plaintiff refused, Defendant Taylor pushed him with one hand and sprayed him with the other. (*Id*. at 3.)  Plaintiff acknowledges he began throwing meal trays and yelled "now go get the Lieutenant cause I ain't going nowhere." (*Id*.)  Defendant Taylor threw a tray back at Plaintiff, yelled at him, and slammed the pod door. (*Id*.)

Plaintiff says Lieutenant Hunter came into the pod and began escorting Plaintiff out, with her hand on his left bicep. (*Id*.)  Defendant Taylor came in behind Lieutenant Hunter, yelling at Plaintiff, "belligerently charging" into him, grabbing and pulling as if he were trying to fight him, "all while spraying his mace." (*Id*.)  Lieutenant Hunter escorted Plaintiff out of the pod while trying to keep Defendant Taylor from attacking him. (*Id*.)  Plaintiff alleges his lip was busted and his eyelids were "severely scarred" and "chemically burned" as a result of the mace. (*Id*. at 4.)

Plaintiff alleges Defendant Taylor then continued to "antagonize and provoke" him in a number of ways:  (1) by mandating that the security staff, as opposed to the nurse, deliver Plaintiff's medications, which Plaintiff could not take for fear of being poisoned; (2) by preventing other officers from allowing Plaintiff out of his cell for recreation time; and (3) by blocking Plaintiff's access to the kiosk, preventing him from filing grievances. (*Id*.)

**III.    SUMMARY JUDGMENT STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

**IV.    ANALYSIS**

    **A.    Official Capacity Claims**

Plaintiff has sued Defendant Taylor in both his official and personal capacities. (Doc. No. 1 at 1.) Official capacity suits "generally represent only another way of pleading an action against

an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690, n. 55 (1978)). As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Id*. at 166. Thus, Plaintiff's official capacity claims against Defendant Taylor are to be treated as claims against Jefferson County. Section 1983 liability against municipalities and other local government units is limited:

> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell*, 436 U.S. at 690-91. A municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Id*. at 691. *See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535-36 (8th Cir. 1999).

Plaintiff has not identified any official policy or unofficial custom of Jefferson County that caused or contributed to his alleged injuries. Because Plaintiff makes no allegation that Defendant Taylor was implementing an unconstitutional policy or custom, his official capacity claims should be dismissed.

  **B. Personal Capacity Claims**

Defendant Taylor contends he is entitled to qualified immunity on Plaintiff's claims against him in his personal capacity. (Doc. No. 37 at 6.) Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a

5

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz,* 533 U.S. 194, 201 (2001). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236). Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Id.* Upon review of the record in this case, I find the facts shown, construed in the light most favorable to Plaintiff, do not establish a violation of his constitutional rights.

1. Excessive Force

When addressing an excessive force claim brought under § 1983, a court's analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. *Kingsley v. Hendrickson*,

\_\_\_ U.S. \_\_\_, 135 S. Ct. 2466, 2473 (2015) (quoting *Graham*, 490 U.S. at 395, n. 10).  Because Plaintiff appears to have been a pretrial detainee at the time of the incident at issue (Doc. Nos. 36 at 1, 36-1), the due process analysis applies.[3]

A pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable.  *Kingsley*, 135 S. Ct. at 2473.  The defendant's state of mind is not a matter that a plaintiff is required to prove.  *Id*. at 2472.  Objective reasonableness turns on the "facts and circumstances of each particular case."  *Id*. at 2473 (quoting *Graham*, 490 U.S. at 386).  A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.  *Id*.  A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security."  *Id*. (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)). Considerations such as the following may bear on the reasonableness or unreasonableness of the force used:  the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.  *Id*.

Defendant Taylor contends his use of force in this instance was a necessary and reasonable attempt to subdue Plaintiff and restore order within the pod and did not amount to punishment. (Doc. No. 37 at 9.)  After careful review of all the evidence, particularly Defendant Taylor's

---

[3] Even assuming Plaintiff was a convicted prisoner at the relevant time, the Eighth Amendment analysis is "different and less protective" than the objective reasonableness standard.  *Burns v. Eaton*, 752 F.3d 1136, 1139 (8th Cir. 2014).

incident report and the video footage submitted in support of his Motion (Doc. Nos. 36-2, 36-3, 36-4), I agree.

According to Defendant Taylor's incident report, Plaintiff became "very irate and argumentative" when told he would not get a new meal tray because of the dirty spoon. (Doc. No. 36-2 at 2.) Defendant Taylor gave him "several commands" to move away from the pod door so Defendant Taylor could enter, and Plaintiff refused. (*Id.*) According to Defendant Taylor, this was the basis for the first burst of OC spray. (*Id.*) The video evidence corroborates Defendant Taylor's account. Plaintiff can be seen speaking with someone at the pod door, holding his tray. (Doc. No. 36-3 at 21:11-26:25.) By the time the mace is sprayed in his direction, several other detainees have gathered around the pod door immediately behind Plaintiff. (*Id.* at 24:00-26:26.)

Defendant Taylor's incident report goes on to say that, after he administered the first burst of OC spray through the pod door, Plaintiff picked up two meal trays and threw them at Defendant Taylor. (Doc. No. 36-2 at 2-3.) Plaintiff then picked up two more trays as if to continue throwing. (*Id.* at 3.) Again, the video evidence confirms this account; Plaintiff can be seen throwing two trays immediately after the first burst of OC spray, picking up two more while shouting in the direction of the door, and then walking away from the door into the pod holding two trays. (Doc. Nos. 36-3 at 26:28-26:51, 36-4 at 26:41-27:02.) And Plaintiff acknowledges he threw trays at Defendant Taylor. (Doc. No. 1 at 3.) The incident report and the video show Defendant Taylor also threw a tray into the pod, but it did not come into contact with Plaintiff. (Doc. Nos. 36-2 at 3, 36-3 at 26:52, 36-4 at 27:04.) Defendant Taylor then shut the pod door and, according to his incident report, called for help. (Doc. No. 36-2 at 3.)

The video shows Lieutenant Hunter and Defendant Taylor entering the pod less than a minute later. (Doc. Nos. 36-3 at 27:32, 36-4 at 27:45.) They can be seen pointing Plaintiff in the

8

direction of the pod door. (*Id*.) According to Defendant Taylor's incident report, he was giving Plaintiff "several direct commands to turn around and be handcuffed immediately," which Plaintiff refused to do. (Doc. No. 36-2 at 3.) The video shows that as soon as Lieutenant Hunter attempts to take hold of Plaintiff's arm, he violently resists and lunges toward Defendant Taylor. (Doc. No. 36-3 at 27:40-27:44.) The video shows Defendant Taylor briefly holding up his can of OC spray; according to his incident report, he administered a one-second burst at that time, "to subdue him." (Doc. Nos. 36-2 at 3, 36-3 at 27:40, 36-4 at 27:52.) Lieutenant Hunter then escorts Plaintiff toward the pod door, with Defendant Taylor following behind them. (Doc. No. 36-3 at 27:42-27:47.) At the door, Plaintiff resists further, lunging in Defendant Taylor's direction while Lieutenant Hunter stands between them, before they finally exit the pod. (*Id*. at 27:50-28:00.)

Given this evidence, I cannot say either application of OC spray was objectively unreasonable under the circumstances. Considering Plaintiff's resistance to Defendant Taylor's commands to move away from the pod door, as well as the crowding around of other detainees, a reasonable officer in Defendant Taylor's position would have perceived a need to restore order. Defendant Taylor attempted to do so with a minimal amount of force when he administered the first burst of OC spray through the pod door. At that point, Plaintiff became physically violent, throwing meal trays at Defendant Taylor and behaving as if he intended to throw more. Upon the officers' entry into the pod, Plaintiff refused commands to submit to handcuffs and continued to physically resist, lunging toward Defendant Taylor and apparently attempting to fight him. Given Plaintiff's active resistance and the threat reasonably perceived by Defendant Taylor, a one-second burst of OC spray cannot be considered excessive. Additionally, although Plaintiff complains of his eyes being matted shut, he acknowledges he was given immediate medical attention. (Doc.

No. 1 at 3-4.) According to the incident report, Plaintiff was given a shower and medical observation and suffered no injury. (Doc. Nos. 36-2 at 1, 36-5 at 11.)

Clearly, Defendant Taylor's incident report and the video evidence contradict Plaintiff's version of events, particularly his claim that Defendant Taylor came into the pod behind Lieutenant Hunter and "belligerently charg[ed]" at him, behaving as if he were trying to fight Plaintiff. (Doc. No. 1 at 3.) The United States Supreme Court has held that when uncontested video evidence is submitted in support of a motion for summary judgment, the facts should be viewed in the light depicted by the video evidence. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). This is so despite the fact that summary judgment evidence is normally to be viewed in the light most favorable to the nonmoving party: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. at 380. Here, incontrovertible video evidence shows Plaintiff was violent toward Defendant Taylor, clearly creating in Defendant Taylor a reasonable perception of a threat to him personally and to the security of the pod. Under these circumstances, Defendant Taylor's application of force was objectively reasonable.

      2.     Harassment

A claim of general harassment is usually not actionable under § 1983 unless it alleges a deprivation of a specific federally protected right. *See, e.g.*, *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993). Therefore, Plaintiff cannot prevail on his general claim that Defendant Taylor "continued to antagonize and provoke" him following the use of force incident. (Doc. No. 1 at 4.) His more specific allegations – that Defendant Taylor arranged for Plaintiff's medication to be delivered by non-medical staff and for him to be denied recreation time and access to the kiosk –

fail to show he was actually denied any constitutional right.  Even assuming Defendant Taylor, a deputy, had authority to arrange for any of those conditions, Plaintiff's unsupported allegations are insufficient.  His belief that he could not take his prescribed medication for fear that it might contain "something poisonous" (Doc. No. 1 at 4) has no obvious basis in reality, and Plaintiff has not alleged he was harmed in any way, either by not taking the medication or by taking it.  His allegation that "no officer" would allow him recreation time "per" Defendant Taylor (*id*.) is insufficient to directly implicate Defendant Taylor, and again, Plaintiff has not alleged he was harmed.  Finally, although he claims to have been denied access to the kiosk, Plaintiff admits he was able to file grievances using an alternative method.  (*Id*. at 6.)  In short, Plaintiff can prove no set of facts showing Defendant Taylor's actions "deprived him of his federally protected rights, as required in order to state a claim for relief under § 1983."  *McDowell*, 990 F.2d at 434.

As to both the excessive force claim and the harassment claim, the facts alleged or shown, construed in the light most favorable to Plaintiff, do not establish a violation of his constitutional rights.  Accordingly, Defendant Taylor is entitled to qualified immunity on Plaintiff's claims against him in his individual capacity, and I recommend those claims be dismissed.

V.     **CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that:

1. Defendant Taylor's Motion for Summary Judgment (Doc. No. 35) be GRANTED.
2. Plaintiff's claims against Defendant Taylor be DISMISSED WITH PREJUDICE.
3. Plaintiff's cause of action be DISMISSED.
4. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

DATED this 26th day of September, 2018.

                                                _____
                                                JOE J. VOLPE
                                                UNITED STATES MAGISTRATE JUDGE